BENTON, C.J.
George William Crain appeals his conviction as a habitual traffic offender for *119 driving “while his license was revoked.” He points out that he has never had a Florida driver’s license (or any other, as far as the record reveals). We reverse his felony conviction, but remand for entry of judgment for driving without a license, a lesser included misdemeanor.
On supplemental briefing,[1] Mr. Crain argues that, because he never had a Florida driver’s license, his conviction for violating section 322.34(5), Florida Statutes (2009), constituted fundamental error.[2] See F.B. v. State, 852 So.2d 226, 230 (Fla.2003) (holding that an “argument that the evidence is totally insufficient as a matter of law to establish the commission of a crime need not be” made in the trial court to preserve the point for appeal); Rodriguez v. State, 964 So.2d 833, 836 n. 1 (Fla. 2d DCA 2007) (“It is ... fundamental error to convict a defendant when the State has failed to prove an element that is essential to the commission of the crime.”). “Conviction of a crime which did not take place is a fundamental error, which the appellate court should correct even when no timely objection or motion for acquittal was made below.” Harris v. State, 647 So.2d 206, 208 (Fla. 1st DCA 1994).
The information charged Mr. Crain with driving “a motor vehicle upon the highways of this State, while his driver’s license or driving privilege was cancelled, suspended or revoked, pursuant to Florida Statutes, Section 322.264 (Habitual Offender), contrary to the provisions of Section 322.34(5), Florida Statutes,” even though section 322.34(5) says nothing about any “driving privilege” distinct from a driver’s license. In the same vein, Elizabeth Dam-guard, a Florida Department of Highway Safety and Motor Vehicles (DHSMV) employee, testified at trial that even a person without a driver’s license could have his “driving privilege” suspended,[3] and that DHSMV takes the view that it can revoke or suspend this disembodied privilege regardless of whether the person has ever had a valid driver’s license, because DHSMV is “revoking and suspending the privilege to have a valid license.”
Over defense objection, the trial court instructed the jury that the state had to prove two elements: (1) that Mr. Crain drove a motor vehicle upon a highway in this state, and (2) that, at the time, his “driver’s license or driving privilege was revoked as a habitual traffic offender.” *120 (Emphasis supplied.) In addition to altering the statutory language by inserting “or driving privilege,” the trial court also added its own, perhaps contradictory, definition of a distinct “driving privilege,” viz., “the privilege to drive if licensed by the State of Florida with a valid driver’s license.”
Mr. Crain was convicted of violating section 822.34(5), which makes it a third-degree felony for a person to drive while his driver’s license is revoked pursuant to section 322.264, Florida Statutes (2009). The Legislature clearly defined “driver’s license” as a certificate authorizing an individual to drive, see § 322.01(17), Fla. Stat. (2009), and “revocation” is defined as the termination of a licensee’s privilege to drive. See § 322.01(36), Fla. Stat. (2009). Chapter 322 does not define “driving privilege.”
While deliberating, the jury posed two questions that go to the heart of the prosecution’s misreading of the statute: “Is having the privilege to drive contingent on having ever had a license?” and “Can you have the privilege taken away if you’ve never had a license?” The trial judge answered: “The only way I can respond to this is to refer you back to your jury instructions and the arguments that you heard from the attorneys and ask you to look again at the evidence that you may have before you in the form of the CDR [certified driving record] and continue to work on your verdict.” The trial judge’s answer did not rely on the statutory language, or apply “the rule that criminal statutes must be strictly construed, [in order that] nothing not clearly ... described in a statute’s very words, as well as manifestly intended by the legislature, shall be considered included within its terms.” Ferguson v. State, 377 So.2d 709, 711 (Fla.1979) (citing Earnest v. State, 351 So.2d 957 (Fla.1977)).
Section 322.34(5), the provision under which appellant was convicted of a third-degree felony, does not outlaw driving by drivers never issued a license to drive.[4] Another provision, section 322.03(1), Florida Statutes (2009), proscribes driving without a valid driver’s license: “Except as otherwise authorized in this chapter, a person may not drive any motor vehicle upon a highway in this state unless such person has a valid driver’s license issued under this chapter.” Driving without a valid license is a second-degree misdemeanor. See § 322.39, Fla. Stat. (2009).
“Driver’s license” is defined as “a certificate that, subject to all other requirements of law, authorizes an individual to drive a motor vehicle and denotes an operator’s license as defined in 49 U.S.C. s. 30301.” § 322.01(17), Fla. Stat. (2009). Mr. Crain was convicted of violating section 322.34(5), Florida Statutes (2009) which provides:
Any person whose driver’s license has been revoked pursuant to s. 322.264 (habitual offender) and who drives any motor vehicle upon the highways of this state while such license is revoked is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
(Emphasis supplied.) Section 322.264, Florida Statutes (2009), defines a “habitual traffic offender” as:
*121 [A]ny person whose record, as maintained by the Department of Highway Safety and Motor Vehicles, shows that such person has accumulated the specified number of convictions for offenses described in subsection (1) or subsection (2) within a 5-year period: (1) Three or more convictions of any one or more of the following offenses arising out of separate acts:
[[Image here]]
(d) Driving a motor vehicle while his or her license is suspended or revoked.
(Emphasis supplied.) Furthermore, DHSMV “shall revoke the license of any person designated a habitual offender, as set forth in s. 322.264, and such person shall not be eligible to be relicensed for a minimum of 5 years from the date of revocation, except as provided for in s. 322.271.” § 322.27(5), Fla. Stat. (2009) (emphasis supplied).
“One of the most fundamental principles of Florida law is that penal statutes must be strictly construed according to their letter.” Perkins v. State, 576 So.2d 1310, 1312 (Fla.1991). “Revocation” is “the termination of a licensee’s privilege to drive.” § 322.01(36), Fla. Stat. (2009) (emphasis supplied). The Second District in Carroll v. State, 761 So.2d 417, 418 (Fla. 2d DCA 2000), adopted the state’s argument that “even though appellant did not have a driver’s license, he did have a ‘driving privilege’ that had been revoked due to his status as a habitual traffic offender, and the revocation of this driving privilege was the equivalent of revocation of a driver’s license for purposes of section 322.264, Florida Statutes (1997).” But this reads language into the statute that the Legislature did not enact.[5]
Nor can it be said that the Legislature “manifestly intended” section 322.34(5) to apply to drivers who have never been issued a license, given the contrasting language in the very next subsection: Section 322.34(6), Florida Statutes (2009), applies even to drivers who have never been issued a license because subsection (6), unlike subsection (5), separately addresses the offenses of driving without a license and driving after cancelation, suspension or revocation of a driver’s “license or ... privilege”:
Any person who operates a motor vehicle:
(a) Without having a driver’s license as required under s. 322.03; or
(b) While his or her driver’s license or driving privilege is canceled, suspended, or revoked pursuant to s. 316.655, s. 322.26(8), s. 322.27(2), or s. 322.28(2) or (4), and who by careless or negligence operation of the motor vehicle causes the death of or serious bodily injury to another human being is guilty of a felony of the third degree....
(Emphasis supplied.) In subsection (6), the Legislature drew a distinction between the act of driving without a valid driver’s license and the act of driving after cancel-ation, suspension or revocation of a driver’s “license or ... privilege.” Under sub *122 section (5), however, because the state did not prove that Mr. Crain ever had a driver’s license, it could not prove that he drove while his driver’s license was revoked.
Although certain provisions in chapter 322 contain the term “driving privilege,” the provisions that pertain to cases like the present case refer only to a “driver’s license,” [6] “a certificate that ... authorizes an individual to drive a motor vehicle.” § 322.01(17), Fla. Stat. (2009). It “ ‘is a firmly established rule that “Courts must apply a statute as they find it, leaving to the legislature the correction of assorted inconsistencies and inequalities in its operation.” ’ ” Guilder v. State, 899 So.2d 412, 419 (Fla. 4th DCA 2005) (quoting State v. Aiuppa, 298 So.2d 391, 404 (Fla.1974)).
Accordingly, we reverse and remand with instructions to vacate Mr. Crain’s conviction as a habitual traffic offender for driving while his (nonexistent) license was revoked, and adjudicate him guilty of the lesser included offense of driving without a valid driver’s license. See § 924.34, Fla. Stat. (2009).
Reversed and remanded with directions.
CLARK, J., concurs.
MARSTILLER, J., dissents with opinion.

. After some confusion surrounding the filing of the record and two extensions of time for filing the initial brief, Mr. Crain's original counsel filed an Anders brief. See Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). But we requested supplemental briefing from the Office of Criminal Conflict and Civil Regional Counsel on the issue of whether appellant had been convicted of a crime not proscribed by section 322.34(5), Florida Statutes (2009), whether the jury instructions were erroneous as given, and whether the trial court erroneously instructed the jury in response to the jury’s questions. We note that Mr. Crain has by now already served his eighteen-month sentence.

. Even if conviction of a nonexistent crime were not fundamental error, use of the altered jury instructions over objection would require remand. See Brown v. State, 11 So.3d 428, 432 (Fla. 2d DCA 2009) (Where "'an instruction is confusing or misleading, prejudicial error occurs where the jury might reasonably have been misled and the instruction caused them to arrive at a conclusion that it otherwise would not have reached.’ ” (quoting Tinker v. State, 784 So.2d 1198, 1200 (Fla. 2d DCA 2001))).

.The state moved a certified copy of Mr. Cram's driving record into evidence, which showed that his "driver’s license” had been revoked as a habitual traffic offender four times, most recently on March 30, 2004, even though the record was clear that he had never actually had or been issued a driver’s license. The state does not argue otherwise.

. Mr. Crain concedes that one can obtain the privilege to drive in Florida via a statutory exemption pursuant to section 322.031, Florida Statutes (2009) or section 322.04, Florida Statutes (2009), but argues that, because Mr. Crain has neither a driver’s license nor falls within one of the statutory exemptions, he does not have a privilege to drive. The state does not contend that Mr. Crain has any sort of statutory privilege to drive; instead, it argues that all individuals have a due process right in the privilege to obtain a driver’s license.

. The Second District reasoned that, since the Legislature used the term “driving privilege” in section 322.27l(l)(b) when referring to section 322.27(5), which uses the term “driver’s license,” the Legislature intended the terms "to mean the same thing and to apply equally to either situation.” Carroll v. State, 761 So.2d 417, 419 (Fla. 2d DCA 2000). On that basis, the court found that Carroll’s "lack of a driver’s license did not relieve him from conviction as a habitual traffic offender whose driver's license (driving privilege) had been revoked or suspended.” Id. See State v. Bletcher, 763 So.2d 1277, 1278 (Fla. 5th DCA 2000) (reversing trial court’s dismissal of charge under section 322.34(5), citing Carroll)', see also Newton v. State, 898 So.2d 1133 (Fla. 4th DCA 2005) (per curiam affir-mance citing Carroll and Bletcher).

. For example, section 322.271(l)(b), Florida Statutes (2009), which is referenced in section 322.27(5), provides that a “person whose driving privilege has been revoked under s. 322.27(5) may, upon expiration of 12 months from the date of such revocation, petition the department for reinstatement of his or her driving privilege.” But, section 322.27(5), Florida Statutes (2009), states that DHSMV shall revoke a habitual offender's license.