IN THE SECOND DISTRICT COURT OF APPEAL, LAKELAND, FLORIDA

September 2, 2016

DONALD BURGESS,            )
                          )
        Appellant,         )
                          )
v.                         )        Case No.  2D14-4680
                          )
STATE OF FLORIDA,          )
                          )
        Appellee.          )
                          )
_____)

BY ORDER OF THE COURT:

        Upon consideration of the motion for rehearing of July 6, 2016, decision filed by

Appellee on July 18, 2016,

        IT IS ORDERED that the motion is granted.  Accordingly, the opinion dated July

6, 2016, is withdrawn, and the attached opinion, which further certifies conflict with

Newton v. State, 898 So. 2d 1133, 1134 (Fla. 4th DCA 2005), and State v. Bletcher, 763

So. 2d 1277, 1278 (Fla. 5th DCA 2000), is substituted therefor.  No further motions will

be entertained.


I HEREBY CERTIFY THE FOREGOING IS A
TRUE COPY OF THE ORIGINAL COURT ORDER.


_____
MARY ELIZABETH KUENZEL, CLERK

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

DONALD BURGESS, )
)
    Appellant, )
)
v. )  Case No. 2D14-4680
)
STATE OF FLORIDA, )
)
    Appellee. )
_____)

Opinion filed September 2, 2016.

Appeal from the Circuit Court for
Collier County; Lauren L. Brodie, Judge.

Howard L. Dimmig, II, Public Defender,
and Amanda V. Isaacs, Assistant Public
Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Johnny T. Salgado,
Assistant Attorney General, Tampa, for
Appellee.

EN BANC

SALARIO, Judge.

    Donald Burgess challenges his conviction and sentence for violating

section 322.34(5), Florida Statutes (2012), which makes it a third-degree felony for one

to drive a motor vehicle when his or her driver's license has been revoked for being a

habitual traffic offender.  Mr. Burgess pleaded guilty to this offense but specifically

reserved for appeal the denial of his motion to dismiss, which raised the issue of

whether he can be convicted under the statute when he never actually had a driver's license. We answered a similar question affirmatively in Carroll v. State, 761 So. 2d 417 (Fla. 2d DCA 2000), and the trial court denied Mr. Burgess's motion to dismiss on that basis. For the reasons that follow, we now recede from Carroll, conclude that a conviction under section 322.34(5) requires a defendant to have had a driver's license, and reverse Mr. Burgess's judgment and sentence.

I.

Maxcene Devariste was driving his car into the parking lot of a shopping plaza in the early evening.[1] According to Mr. Devariste, he stopped at a stop sign at an intersection near the entrance to the lot and saw a small black car moving in the opposite direction. Although there was also a stop sign facing in the direction of the small black car, it traveled into the intersection without stopping and struck Mr. Devariste's car. The black car did not stop, but Mr. Devariste saw its license plate number and immediately called 911.

The black car was stopped by two corporals with the Collier County Sheriff's Office, and Mr. Burgess was identified as the driver. Mr. Burgess gave the corporals a version of events similar to Mr. Devariste's, except that he denied running the stop sign and said Mr. Devariste caused the accident. A records check revealed that Mr. Burgess did not have a valid driver's license and was a habitual traffic offender.

---

[1]We draw the background facts of the alleged offense from the probable cause affidavit filed in the trial court. The recitation of the facts contained in that affidavit is not intended to reflect a determination by this court that those facts have been proved in accord with law.

He was arrested for driving while his license was revoked as a habitual offender, leaving the scene of a crash, and driving without a license.

The State did not file charges for leaving the scene and driving without a license. In a one-count information, the State charged only that Mr. Burgess "did unlawfully operate a motor vehicle upon the highways of this state while his driver's license had been revoked pursuant to s. 322.264 (habitual traffic offender), contrary to Florida Statute 322.34(5)." Mr. Burgess responded with a motion to dismiss under Florida Rule of Criminal Procedure 3.190(c)(4) alleging that he "has never had a driver's license in Florida or any other state." Because he never had a license, he argued, he could not be convicted of a crime having as an essential element the act of driving after that nonexistent driver's license had been revoked.

The State did not file a traverse and thus admitted, for purposes of Mr. Burgess's motion, the truth of his allegation that he had never held a driver's license. See Fla. R. Crim. P. 3.190(d). At a hearing on the motion, Mr. Burgess acknowledged that under our decision in Carroll, a defendant could be convicted under the statute even if he had not held a driver's license, but he argued that the First District's decision to the contrary in Crain v. State, 79 So. 3d 118 (Fla. 1st DCA 2012), set up a conflict among the district courts of appeal on the question. Correctly recognizing that it was legally bound to follow Carroll, the trial court denied the motion to dismiss.

Thereafter, Mr. Burgess entered a negotiated plea of guilty to the one offense charged in the information, reserving for appeal the denial of his motion to dismiss. The trial court accepted the plea and sentenced Mr. Burgess to five years in prison. This is Mr. Burgess's timely appeal.

- 3 -

II.

We review an order on a motion to dismiss under rule 3.190(c)(4) de novo.

State v. Pasko, 815 So. 2d 680, 681 (Fla. 2d DCA 2002). On appeal, Mr. Burgess

argues that we should reconsider our holding in Carroll and hold that section 322.34(5)

applies only when the defendant had an actual, physical driver's license that was

subsequently revoked because the defendant was a habitual traffic offender. Failing

that, Mr. Burgess requests that we certify conflict with the First District's decision in

Crain. We agree that Carroll was wrongly decided, recede from it, and reverse Mr.

Burgess's conviction and sentence.[2]

A.

Titled "Driver's Licenses," chapter 322 regulates licensure for the

operation of motor vehicles. It sets up a general rule that a person must have a valid

driver's license issued by the Department of Highway Safety and Motor Vehicles in

order to operate a motor vehicle in the state. § 322.03(1). There are exceptions to the

requirement of licensure—nonresidents licensed in another jurisdiction need not have a

Department-issued license, for example—but licensure in general is the rule. See

§§ 322.03, .04. Absent an exception, driving a car without a valid driver's license is a

misdemeanor of the second degree. See §§ 322.03(1), .39.

---

[2]During the pendency of this appeal the Third District certified conflict with Carroll, 761 So. 2d 417, and reached a similar conclusion to the one we reach in this opinion. See State v. Miller, 193 So. 3d 1001 (Fla. 3d DCA 2016). Miller also certifies conflict with Newton v. State, 898 So. 2d 1133, 1134 (Fla. 4th DCA 2005), and State v. Bletcher, 763 So. 2d 1277, 1278 (Fla. 5th DCA 2000), to the extent that those cases cite our prior opinion in Carroll with approval. We similarly certify conflict with Newton and Bletcher.

- 4 -

The term "driver's license" is defined by section 322.01(17) as "a certificate that, subject to all other requirements of law, authorizes an individual to drive a motor vehicle and denotes an operator's license as defined in 49 U.S.C. s. 30301." 49 U.S.C. § 30301(5) (2012) defines a "motor vehicle operator's license" as a "license issued by a State authorizing an individual to operate a motor vehicle on public streets, roads, or highways." The requirement that a motor vehicle operator have a driver's license thus means that the operator must have a certificate issued by the Department that authorizes the person to operate a motor vehicle. See also § 322.032(3) (providing for the development of "digital proof of driver's license" on the same terms required for "issuance of a physical driver's license").

In 1972, the legislature amended chapter 322 to add a requirement—codified at section 322.27(5)—that the Department revoke the license of any individual designated as a habitual traffic offender. See generally ch. 72-175, Laws of Fla. A "habitual traffic offender" is a person whose driving record, as maintained by the Department, reflects a specified number of convictions for specified traffic offenses. § 322.264, Fla. Stat. (2012). A key purpose of this revocation provision is to "[d]eny the privilege of operating motor vehicles . . . to persons who . . . have demonstrated their indifference to the safety and welfare of others." § 322.263(2).

To enforce the revocation of driver's licenses imposed on habitual traffic offenders, the legislature also added subsection (5) to section 322.34 in 1972. That statute establishes various criminal offenses and noncriminal infractions related to driving after a license has been suspended, revoked, canceled, or disqualified. Section

322.34(5) makes it a third-degree felony to drive when a driver's license has been revoked for being a habitual traffic offender. The statute provides as follows:

> Any person whose <u>driver's license</u> has been revoked pursuant to s. 322.264 (habitual offender) and who drives any motor vehicle upon the highways of this state while such <u>license</u> is revoked is guilty of a felony of the third degree . . . .

§ 322.34(5), Fla. Stat. (2012) (emphasis added).

We must enforce section 322.34(5) in accord with "the plain meaning of the actual language" the legislature used. <u>Diamond Aircraft Indus., Inc. v. Horowitch</u>, 107 So. 3d 362, 367 (Fla. 2013). When the statutory text is unambiguous, "there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." <u>Holly v. Auld</u>, 450 So. 2d 217, 219 (Fla. 1984) (quoting <u>A.R. Douglass, Inc. v. McRainey</u>, 137 So. 157, 159 (Fla. 1931)). We resort to other rules of statutory construction only where the statute is ambiguous in the sense that it could be reasonably understood to mean two different things. <u>Fajardo v. State</u>, 805 So. 2d 961, 963-64 (Fla. 2d DCA 2001).

On its face, section 322.34(5) created an offense that can only be committed when a defendant who was issued a driver's license has had that license revoked because he or she is a habitual traffic offender. Because a "driver's license" is a defined term referring to a physical certificate authorizing a person to drive, it necessarily follows that a defendant who has never been issued such a certificate cannot be convicted under this statute because a license that was never issued does not exist for the purposes of revoking it. <u>See</u> <u>Crain</u>, 79 So. 3d at 122 (holding that the statute "refer[s] only to a 'driver's license,' 'a certificate that . . . authorizes an individual

- 6 -

to drive a motor vehicle.' " and that "[i]t ' "is a firmly established rule that '[c]ourts must apply a statute as they find it" ' " (footnote omitted) (citation omitted) (quoting § 322.01(17), Fla. Stat. (2009), and Guilder v. State, 899 So. 2d 412, 419 (Fla. 4th DCA 2005))); see also § 322.01(36) (defining the term "revocation" for the purposes of chapter 322 as applying only to "the termination of a licensee's privilege to drive" (emphasis added)).

We see no ambiguity in section 322.34(5) and, for that reason, conclude that a defendant must actually have a driver's license—i.e., a certificate authorizing the defendant to operate a motor vehicle—in order to be convicted under the statute. There is simply no reasonable reading of section 322.34(5) that does not require the revocation of a driver's license. Nor is there a reasonable reading of the statutory definition of "driver's license" that refers to anything other than a certificate authorizing a person to drive. See Crain, 79 So. 3d at 121. A habitual traffic offender who never had such a certificate may be guilty of the second-degree misdemeanor of driving with no valid license, but he cannot under the plain statutory language be guilty of the third-degree felony of driving with a license that never existed yet was revoked because he was a habitual traffic offender.

B.

In Carroll, we held that the defendant's "lack of a driver's license did not relieve him" from prosecution and conviction under section 322.34(5). 761 So. 2d at 419. To reach that conclusion, we relied on section 322.271(1)(b), Florida Statutes (1997), which deals with restoration of driving privileges to habitual traffic offenders. It provides as follows:

> A person whose <u>driving privilege</u> has been revoked under s. 322.27(5) may, upon expiration of 12 months from the date of such revocation, petition the department for restoration of her <u>driving privilege</u>. Upon such petition and after investigation of the person's qualification fitness, and need to drive, the department shall hold a hearing pursuant to chapter 120 to determine whether the <u>driving privilege</u> shall be reinstated on a restricted basis solely for business or employment purposes.

<u>Id.</u> (emphasis added).[3] Because the statute refers to a "driving privilege" instead of a "driver's license," we accepted the State's argument that "even though appellant did not have a driver's license, he did have a 'driving privilege' that had been revoked due to his status as a habitual traffic offender." 761 So. 2d at 418. We reasoned that the legislature must have meant "driver's license" and "driving privilege" to be used interchangeably so as to "mean the same thing and to apply equally to either situation." <u>Id.</u> at 419. Thus, this court concluded, a habitual traffic offender whose driving privilege was revoked could be convicted under section 322.34(5) of driving while his driver's license was revoked for being a habitual traffic offender. <u>Id.</u>

In sum, <u>Carroll</u> held (a) that the term "driving privilege" in section 322.271(1)(b) carries a broader meaning than the right to drive conferred by a certificate authorizing one to drive, which the defendant in <u>Carroll</u> never had, and (b) that this broader meaning controls the scope of section 322.34(5) because "driver's license" and "driving privilege" mean the same thing. Upon consideration by the full court, although we agree that the term "driving privilege" has a broader meaning than that of "driver's

---

[3]Although <u>Carroll</u> relies on the 1997 version of the statute, the relevant wording remains the same in the 2012 version.

license," as discussed below, we cannot regard the balance of Carroll's analysis as correct as a matter of statutory interpretation.

Assuming that the legislature in fact intended driver's license and driving privilege to mean the same thing, the correct conclusion would be that the term "driving privilege" refers to the right to drive conveyed by a certificate authorizing one to do so. The legislature defined the term "driver's license" in section 322.01(17) as a certificate authorizing a person to drive, and it stated that the term would carry that meaning throughout chapter 322. See § 322.01 (stating that defined terms carry their specified meanings "[a]s used in this chapter"). We see no indication in the text that the legislature intended the term "driver's license" to have a different meaning in section 322.34(5) than it does anywhere else in chapter 322 and certainly not the clear indication required to justify departing from the meaning the legislature expressly gave that term.[4] See Nicholson v. State, 600 So. 2d 1101, 1103 (Fla. 1992) ("When a definition of a word or phrase is provided in a statute, that meaning must be ascribed to the word or phrase whenever it is repeated in the statute unless a contrary intent clearly appears."). The Carroll opinion provides no such indication either and, in fact, does not mention that the legislature defined the term "driver's license."

_____

[4]When in chapter 322 the legislature actually has meant the term "driver's license" to mean something other than a Department-issued certificate, it has said so by explicitly giving that term a different meaning for purposes of a specific statutory section. See, e.g., §§ 322.212(1) (stating, for purposes of a statute proscribing unlawful possession and certain other unlawful acts with respect to a driver's license that "[t]he term 'driver's license' includes a driver's license issued by the department or its agents or a driver's license issued by any state or jurisdiction that issues licenses recognized in this state for the operation of a motor vehicle"), .50(Art. II)(4) (defining the term "driver's license" for purposes of the Nonresident Violator Compact as "any license or privilege to operate a motor vehicle issued under the laws of the home jurisdiction"). The legislature did not do so with respect to section 322.34(5).

If the terms "driver's license" and "driving privilege" are synonymous, as Carroll posited, fidelity to the legislature's decision to define "driver's license" requires giving "driving privilege" the meaning afforded the defined term "driver's license," not adding to that definition a different meaning selected by a reviewing court after the fact. See Hayes v. State, 750 So. 2d 1, 4 (Fla. 1999) ("We are not at liberty to add words to statutes that were not placed there by the [l]egislature."); FINR II, Inc. v. Hardee Cty., 164 So. 3d 1260, 1264 (Fla. 2d DCA 2015) (holding that a court may not "rewrite the statute to insert an additional requirement not placed there by the legislature"). When due regard is given to the fact that the legislature defined the term "driver's license," the offense created by section 322.34(5) cannot be committed by someone who never held a certificate even if driving privilege and driver's license could mean the same thing.

More fundamentally, however, Carroll's conclusion that the term "driver's license" in section 322.34 means the same thing as "driving privilege" in section 322.271 is itself unsound. Section 322.34 in particular, and chapter 322 in general, commonly refer to the terms "driver's license" and "driving privilege" disjunctively as "driver's license or driving privilege." See, e.g., § 322.34(1) (establishing violation for driving by "any person whose driver's license or driving privilege has been cancelled, suspended, or revoked"), (2) (establishing criminal offenses against "[a]ny person whose driver's license or driving privilege has been canceled, suspended, or revoked as provided by law" who knowingly operates a motor vehicle), (6)(b) (same; negligent operation of motor vehicle resulting in death or serious bodily injury), (7) (same; involving commercial motor vehicle), (8)(a) (describing procedures "[u]pon the arrest of a person for the offense of driving while the person's driver's license or driving privilege

- 10 -

is suspended or revoked"); see also §§ 322.055(1)-(4) (providing for revocation or suspension of "driver's license or driving privilege" in circumstances involving drug offenses); .056(1)-(3) (providing for revocation, suspension, or delay of eligibility of "driver's license or driving privilege" in circumstances involving drug and tobacco offenses); .20(2) (requiring Department to keep records of revocation or suspension of "driver's license or driving privilege").  The legislature's repeated use of the disjunctive formulation "driver's license or driving privilege" demonstrates that the two terms are not synonyms because the legislature does not ordinarily use different words to mean the same thing.[5]  See Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise; here it does not."); see also Maddox v. State, 923 So. 2d 442, 446 (Fla. 2006) ("Another principle of statutory construction that compels our conclusion . . . is the rule which recognizes that '[t]he legislative use of different terms in different portions of the same statute is strong evidence that different meanings were intended.' " (alteration in the original) (quoting State v. Mark Marks, P.A., 698 So. 2d 533, 541 (Fla. 1997))).  We see no indication in the statutory text that the legislature departed from that ordinary understanding when it used the term "driving privilege" separately from the term "driver's license."

---

[5]The revocation statute applicable to habitual traffic offenders provides only that "[t]he department shall revoke the license of any person designated a habitual offender, . . . and such person is not eligible to be relicensed for a minimum of 5 years." § 322.27(5), Fla. Stat. (2013) (emphasis added).  The statutory definition of revocation refers to "the termination of a licensee's privilege to drive." § 322.01(36), Fla. Stat. (2012) (emphasis added).  This language raises a question regarding whether the habitual traffic offender statutes could ever authorize the Department to revoke a driving privilege independently from a driver's license.  We do not address this issue because it is not necessary to our decision and has not been raised or briefed by the parties.

Although the term "driving privilege" is not defined in chapter 322, ordinary usage of the word "privilege" when, as here, employed with reference to an activity regulated by the state connotes an individual's legal ability to engage in that activity free from state sanction.[6] When modified by the term "driving," then, a privilege would encompass an individual's ability to operate a motor vehicle in accord with law. Although it is not necessary for us to identify all circumstances that understanding might reach, it at least includes both the ability to drive as conferred by a driver's license and the legal ability to drive as conferred by an exemption from licensure. See §§ 322.03, .04. Indeed, chapter 322 itself refers to the exemption from licensure afforded to nonresidents as conferring a privilege to drive. See, e.g., § 322.23(1) (1971 & 2012) ("The privilege of driving a motor vehicle on the highways of this state, given to a nonresident, shall be subject to suspension or revocation . . . .").

When properly interpreted to include the right to drive both the license and exemption from licensure, the legislature's use of the term "driver's license" in section 322.34(5) is harmonized with its use of the term "driving privilege" in section 322.271(1)(b). See Woodham v. Blue Cross & Blue Shield of Fla., Inc., 829 So. 2d 891, 898 (Fla. 2002) ("[W]here possible, courts must give full effect to all statutory provisions

---

[6]That meaning is consistent with both the understanding of the term "privilege" at the time the habitual traffic offender statutes were adopted and the understanding of that word today. See Webster's Third New Int'l Dictionary of the English Language (1966) (defining privilege, inter alia, as "a right or immunity granted a particular benefit, advantage, or favor" and "a condition of legal nonrestraint of natural powers either generally or in respect to a particular case"); *Privilege*, Black's Law Dictionary (4th ed. 1968) (defining privilege, inter alia, as "[t]hat which releases one from the performance of a duty or obligation, or exempts one from a liability which he would otherwise be required to perform, or sustain in common with all other persons"); *Privilege,* Black's Law Dictionary (10th ed. 2014) ("A privilege grants someone the legal freedom to do or not to do a given act.").

- 12 -

and construe related statutory provisions in harmony with one another." (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So. 2d 452, 455 (Fla. 1992))). The driving privilege that is the subject of an application for restoration under section 322.271(1)(b) includes and refers to the "driver's license" that was revoked under the habitual traffic offender statutes as described in section 322.34(5). After having a driver's license revoked for being a habitual traffic offender, one can have the privilege that license conveyed restored by petitioning to have the license reinstated.

Because sections 322.34(5) and 322.271(1)(b) operate harmoniously without denying "driver's license" its defined meaning, there is no reason to interpret either statute other than in accord with the plain meaning of its text. The plain meaning of section 322.34 is that a person may be prosecuted only when his or her driver's license has been revoked. Because Carroll is at odds with that meaning, we must recede from it.

We note in closing that while it might appear that extending section 322.34(5) to driving without ever having had a license, as Carroll did, would better comport with the expressed legislative purpose to deter habitual traffic offenders, see § 322.263, one cannot say that interpreting the statute in accord with its plain language leads to absurd or unreasonable results. The defined term "driver's license" will presumably capture the lion's share of individuals who become habitual traffic offenders because obtaining a driver's license is, by statutory design, the primary way people become able to drive. While the plain language of section 322.34(5) excludes offenders who flout the requirement of licensure, driving without a valid license is a separate offense. That offense may not be punished as severely as driving on a license revoked

on habitual traffic offender grounds, but we cannot say that the difference in classification is so stark or severe as to render compliance with the plain language an absurdity.  See State v. Hackley, 95 So. 3d 92, 95 (Fla. 2012) ("[T]he absurdity doctrine is not to be used as a freewheeling tool for courts to second-guess and supplant the policy judgments made by the [l]egislature.  It has long been recognized that the absurdity doctrine 'is to be applied to override the literal terms of a statute only under rare and exceptional circumstances.' " (quoting Crooks v. Harrelson, 282 U.S. 55, 60 (1930))).  If it is important to expand section 322.34(5) to reach habitual traffic offenders who never had a license, that policy choice can and should be made by the legislature.

III.

Mr. Burgess's motion alleged that he never held a driver's license, an allegation deemed admitted by virtue of the State's failure to file a traverse.  Because he never held a driver's license, he could not be convicted under section 322.34(5) of driving while his license was revoked for having been a habitual traffic offender.  We therefore reverse his judgment and sentence and remand for such additional proceedings as are consistent with this opinion.  In so doing, we recede from our decision in Carroll and certify conflict with Newton v. State, 898 So. 2d 1133, 1134 (Fla. 4th DCA 2005), and State v. Bletcher, 763 So. 2d 1277, 1278 (Fla. 5th DCA 2000), which followed Carroll in unelaborated per curiam decisions.  On remand, the trial court shall immediately vacate the judgment for the felony offense, dismiss the felony charge, and determine, as a result, whether Mr. Burgess is entitled to immediate release.  For the purposes of that determination, we note that regardless of whether the State elects to, or can, attempt on remand to proceed against Mr. Burgess on the lesser charge of

driving without a valid license, Mr. Burgess has already served an amount of time that exceeds the sentence he could receive for that lesser charge.

Reversed and remanded; conflict certified.

VILLANTI, C.J., and NORTHCUTT, CASANUEVA, SILBERMAN, KELLY, WALLACE, LaROSE, KHOUZAM, CRENSHAW, MORRIS, BLACK, SLEET, LUCAS, and BADALAMENTI, JJ., Concur.

ROTHSTEIN-YOUAKIM, J., took no part in the consideration or disposition of the case.