DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

ALAN G. WALKER and GAY L. HESS, as personal
representatives of the Estate of Fred G. Walker,

Appellants,

v.

BANKERS LIFE AND CASUALTY COMPANY,

Appellee.

No. 2D2023-2187
_____

December 4, 2024

Appeal from the Circuit Court for Sarasota County; Andrea McHugh,
Judge.

Gregg M. Horowitz of the Law Office of Gregg M. Horowitz, P.A., Sarasota,
for Appellant.

Kimberly K. Dionisio and Daniel J. Koleos of Koleos Rosenberg Dionisio
PLLC, Fort Lauderdale, for Appellee.

SILBERMAN, Judge.

Alan G. Walker and Gay L. Hess, as personal representatives of the
Estate of Fred G. Walker (collectively, the Estate), appeal the entry of a
final summary judgment in favor of Bankers Life and Casualty Company.
The trial court determined that the long-term care insurance policy
issued by Bankers Life did not provide coverage for home health care

services provided to Fred G. Walker (hereafter, Walker). We reverse and remand for further proceedings.

In 1996, Bankers Life issued to Walker a long-term care insurance policy (form GR-N105), modified by an Amendment Rider issued later that year (together, the policy). The policy, which remained in effect at all pertinent times, included coverage for home health care. In 2015, Michel Chouloute, an independent certified nursing assistant ("CNA"), was retained to provide home health care services to Walker.

Walker submitted a claim for benefits for those services to Bankers Life, which Bankers Life denied. Bankers Life maintained that Chouloute did not satisfy the requirements of the policy. Bankers Life stated that the policy allowed for the payment of benefits for home health care services only when those services are "provided by a Home Health Care Agency, or by a nurse registry as licensed in Florida under Chapter 400 under a Home Health Care Plan." It determined that Chouloute does not meet the provider eligibility requirement "because he is not an agency or organization that specializes in giving nursing care or therapeutic services in the home that is licensed to provide such care or services." Even though Chouloute was licensed as a CNA, Bankers Life stated that "an independent caregiver is not covered under the policy."

Section 627.94071, Florida Statutes (2015), provides the "Minimum standards for home health care benefits." The statute sets forth requirements for policies containing a home health care benefit, stating as follows:

> A long-term care insurance policy, certificate, or rider that contains a home health care benefit must meet or exceed the minimum standards specified in this section. The policy, certificate, or rider may not exclude benefits by any of the following means:

2

(1)   Providing that home health care cannot be covered unless the insured or claimant would, without the home health care, require skilled care in a skilled nursing facility.

(2)   Requiring that the insured or claimant first or simultaneously receive nursing or therapeutic services in a home setting or community setting before home health care services are covered.

(3)   Limiting eligible services to services provided by registered nurses or licensed practical nurses.

(4)   Requiring that a nurse or therapist provide services covered by the policy that can be provided by a home health aide or by another licensed or certified home care worker acting within the scope of his or her license or certification.

(5)   Requiring that a licensed home health agency provide services covered by the policy that can be provided by a nurse registry licensed under chapter 400.

(6)   Excluding coverage for personal care services provided by a home health aide.

(7)   Requiring that the provision of home health care services be at a level of certification of licensure greater than that required by the eligible service.

(8)   Requiring that the insured/claimant have an acute condition before home health care services are covered.

(9)   Limiting benefits to services provided by Medicare-certified agencies or providers.

(10)   Excluding coverage for adult day care services.

§ 627.94071.

The key statutory language at issue here is the requirement that long-term care insurance policies, certificates, or riders "must meet or exceed the minimum standards specified in this section" and may not exclude benefits by "[e]xcluding coverage for personal care services provided by a home health aide."  Section 400.462(15), Florida Statutes (2015), defines home health aide as

3

a person who is trained or qualified, as provided by rule, and who provides hands-on personal care, performs simple procedures as an extension of therapy or nursing services, assists in ambulation or exercises, or assists in administering medications as permitted in rule and for which the person has received training established by the agency under s. 400.497(1).

The record reflects that Chouloute provided Walker with services covered by this definition, and Bankers Life concedes that Chouloute qualifies as a home health aide under Florida law. But Bankers Life maintains that despite Chouloute being a licensed CNA who is statutorily qualified as a home health aide to provide home health care services, the policy precludes coverage for his services because he is not affiliated with a Home Health Care Agency or nurse registry as required by the policy.

In granting final summary judgment in favor of Bankers Life, the trial court found that "nothing in the statute prevents [Bankers Life] from requiring a protocol for home health care and the protocol is the condition that the insured agreed to when he signed the insurance contract." The Estate argues, and we agree, that the policy language, by adding conditions that restrict coverage for an independent, statutorily qualified home health care aide such as Chouloute, constitutes an improper exclusion of coverage.

We interpret both statutes and insurance policies de novo. *Ganzemuller v. Omega Ins. Co.*, 244 So. 3d 1189, 1190 (Fla. 2d DCA 2018) (first citing *Daniels v. Fla. Dep't of Health*, 898 So. 2d 61, 64 (Fla. 2005); and then citing *Bioscience W., Inc. v. Gulfstream Prop. & Cas. Ins. Co.*, 185 So. 3d 638, 640 (Fla. 2d DCA 2016)). "It is generally held that the renewal of a contract of insurance constitutes the making of a new contract for the purpose of incorporating into the policy changes in the statutes regulating insurance contracts." *Bell Care Nurses Registry, Inc.*

4

*v. Cont'l Cas. Co.*, 25 So. 3d 13, 15 (Fla. 3d DCA 2009) (quoting *Metro. Prop. & Liab. Ins. Co. v. Gray*, 446 So. 2d 216, 218 (Fla. 5th DCA 1984)). Walker entered into the policy agreement with Bankers Life on June 27, 1996, and he renewed the policy annually. Thus, section 627.94071(6), which provides that a long-term care policy "that contains a home health care benefit must meet or exceed the minimum standards specified in this section," is applicable to Walker's policy.

Insurers must "make clear precisely what is excluded from coverage." *Bell Care*, 25 So. 3d at 17. "Policy provisions that tend to limit or avoid liability are interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy, and exclusions to coverage are construed even more strictly against the insurer than coverage clauses." *Flores v. Allstate Ins. Co.*, 819 So. 2d 740, 744 (Fla. 2002). Further, "restrictions on statutorily mandated coverage must be carefully examined because exclusions that are inconsistent with the purpose of the statute are invalid." *Nunez v. Geico Gen. Ins. Co.*, 117 So. 3d 388, 398 (Fla. 2013).

Bankers Life argues that its policy language does not exclude coverage for home health care but rather provides "a requirement for provider eligibility for the performance of such services under a Home Health Care Plan and that the Home Health Aide to be on staff with a Home Health Care Agency or nurse registry listed in Florida under Chapter 400." However, as noted previously, section 627.94071(6) provides that a policy's home health care benefit "must meet or exceed the minimum standards specified in this section" and may not exclude benefits by "[e]xcluding coverage for personal care services provided by a home health aide." The policy language here is inconsistent with the statutory definition of a home health care aide, effectively restricting

5

coverage rather than meeting or exceeding the minimum standards established by section 627.94071(6). By doing so, the policy improperly excludes coverage for the home health care services provided to Walker by Chouloute. Thus, we reverse the order granting final summary judgment in favor of Bankers Life and remand for further proceedings.

Reversed and remanded.

CASANUEVA, J., Concurs.
LABRIT, J., Dissents with opinion.

LABRIT, Judge, Dissenting.

Because the long-term care policy at issue did not "[e]xclud[e] coverage" for home health aide services as section 627.94071(6), Florida Statutes (2015), proscribes, I respectfully dissent.

The policy, as amended via rider, includes the following as "COVERED EXPENSES":

> Charges for the following services and supplies under a written Home Health Care Plan which are recommended or prescribed by a Home Health Care Agency or provided by a nurse registry as licensed in Florida under Chapter 400:
>
> 1. Visits by . . . a Home Health Aide to give Personal Care Services . . . .

This language is not ambiguous. It covers visits by a home health aide who is associated with a home health care agency or a nurse registry. And there is no dispute that the home health aide Mr. Walker's family hired was not associated with such an agency or registry.

Thus, the question before us is not whether the policy is susceptible to an interpretation that would provide coverage. It isn't, so the traditional tenets of policy interpretation that largely favor insureds don't apply. *Cf. Flores v. Allstate Ins. Co.*, 819 So. 2d 740, 744 (Fla. 2002) (explaining fundamental principles of policy interpretation). The

6

question is instead whether section 627.94071(6) invalidates the policy language above and precludes final summary judgment for the insurer. Based on the statutory text, I conclude that it doesn't.

Several years ago, there was a paradigm shift in our jurisprudence that changed how courts must interpret statutes. *See State v. Crose*, 378 So. 3d 1217, 1234 (Fla. 2d DCA 2024). Before, legislative intent was the polestar. *Id.* at 1232. Now, the supremacy-of-text principle prevails. *See id.* at 1233–34. Under this principle, "[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." *Ham v. Portfolio Recovery Assocs.*, 308 So. 3d 942, 946 (Fla. 2020) (alteration in original) (quoting Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012)); *see also Crose*, 378 So. 3d at 1232 ("[T]o derive the meaning of statutes, we are to look to the text itself, as understood in its context, not to any purported intent underlying the text." (citations omitted)).

In applying this principle, we "must 'exhaust "all the textual and structural clues" ' that bear on the meaning of a disputed text." *Conage v. United States*, 346 So. 3d 594, 598 (Fla. 2022) (quoting *Alachua County v. Watson*, 333 So. 3d 162, 169 (Fla. 2022)). We also may resort to traditional canons of statutory interpretation to aid the interpretative process. *See id.*; *see also DeSantis v. Dream Defenders*, 389 So. 3d 413, 425 n.12 (Fla. 2024) (explaining that canons of statutory construction "aren't necessarily triggered by ambiguity, but by the need to understand a text"). Several canons are particularly applicable here.

The whole-text canon, for example, requires us "to consider the entire text, in view of its structure and of the physical and logical relation of its many parts." *DeSantis*, 389 So. 3d at 425 n.12 (quoting Scalia & Garner, *supra*, at 167). Another well-recognized canon "presume[s] that

7

a legislature says in a statute what it means and means in a statute what it says there." *Crose*, 378 So. 3d at 1236 (quoting *Page v. Deutsche Bank Tr. Co. Ams.*, 308 So. 3d 953, 958 (Fla. 2000)). Moreover, "the legislature does not ordinarily use different words to mean the same thing" and the "use of different terms in different portions of the same statute is strong evidence that different meanings were intended." *Burgess v. State*, 198 So. 3d 1151, 1157 (Fla. 2d DCA 2016) (first citing *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979); and then quoting *Maddox v. State*, 923 So. 2d 442, 446 (Fla. 2006)).

Here, the whole text of section 627.94071 is enlightening, and it's determinative in my view. The statute provides that long-term care policies like the one at issue

> may not exclude benefits by any of the following means:
>
> (1)   Providing that home health care cannot be covered unless the insured or claimant would, without the home health care, require skilled care in a skilled nursing facility.
>
> (2)   Requiring that the insured or claimant first or simultaneously receive nursing or therapeutic services in a home setting or community setting before home health care services are covered.
>
> (3)   Limiting eligible services to services provided by registered nurses or licensed practical nurses.
>
> (4)   Requiring that a nurse or therapist provide services covered by the policy that can be provided by a home health aide or by another licensed or certified home care worker acting within the scope of his or her license or certification.
>
> (5)   Requiring that a licensed home health agency provide services covered by the policy that can be provided by a nurse registry licensed under chapter 400.
>
> (6)   Excluding coverage for personal care services provided by a home health aide.

(7) Requiring that the provision of home health care services be at a level of certification of licensure greater than that required by the eligible service.

(8) Requiring that the insured/claimant have an acute condition before home health care services are covered.

(9) Limiting benefits to services provided by Medicare-certified agencies or providers.

(10) Excluding coverage for adult day care services.

§ 627.94071. This statute essentially lists what a long-term care policy may not do. Subsection (6) specifically prevents an insurer from "[e]xcluding coverage" for home health aide services. *See id.* We must interpret this subsection in context, and there are numerous clues that tell us what it means—and doesn't mean.

For one thing, section 627.94071 conspicuously uses different terms to describe the various things it prohibits. Some subsections, such as subsections (3) and (9), prevent policies from "[l]imiting" eligible services or benefits. *See id.* Others like subsections (5) and (7) preclude insurers from "[r]equiring" certain licensures or qualifications. *See id.* And two subsections, including the one at issue, forbid a policy from "[e]xcluding coverage" for certain services. *See id.* These different terms must mean different things, *see Burgess*, 198 So. 3d at 1157, so excluding coverage cannot mean limiting eligible services or requiring certain qualifications for coverage. If it did, the legislature would have said so and used the same language throughout the statute.

These different terms also have different meanings. "Exclude" means to "bar" or "[t]o prevent from being included, considered, or accepted." *Exclude*, Am. Heritage Dictionary of the Eng. Language (5th ed. 2022); *cf.* Scalia & Garner, *supra*, at 419, 423. "Limit" means "[t]o confine or restrict with a limit." *Limit*, Am. Heritage Dictionary of the Eng. Language (5th ed. 2022). The policy language at issue is much

9

more akin to a limitation or restriction on coverage for home health aide services, as opposed to an exclusion that bars or prevents these services from being covered altogether. And section 627.94071(6) plainly precludes an exclusion, not a limitation.[1]

For these reasons, I agree with the trial court that section 627.94071(6) does not prevent an insurer from placing certain limitations or parameters on home health aide coverage. The policy here contained limitations but did not "[e]xclud[e] coverage" as the statute contemplates, so I would affirm the judgment the trial court entered.

———————————————————

Opinion subject to revision prior to official publication.

---

[1] I am mindful that section 627.94071 requires a long-term care policy to "meet or exceed the minimum standards specified in this section." But the policy meets these standards because it does not exclude coverage for home health aide services and instead includes them as covered expenses with restrictions, which the text of section 627.94071(6) does not prohibit.

10