NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

STATE OF FLORIDA,                )
                                 )
         Appellant,              )
                                 )
v.                               )        Case No. 2D17-757
                                 )
CHESTER RALPH KWITOWSKI, JR.,     )
                                 )
         Appellee.               )
_____)

Opinion filed June 20, 2018.

Appeal from the Circuit Court for Polk
County; James A. Yancey, Judge.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Peter Koclanes,
Assistant Attorney General, Tampa, for
Appellant.

James Felman and Brandon K. Breslow
of Kynes, Markman & Felman, P.A.,
Tampa, for Appellee.


SALARIO, Judge.

        The State appeals from an order granting Chester Kwitowski's motion to

dismiss three counts of perjury in violation of section 837.02(2), Florida Statutes (2016).

That statute makes perjury in "an official proceeding related to the prosecution of a

capital felony" a second-degree felony.  Id.  Mr. Kwitowski is alleged to have committed

perjury in a prosecution for capital sexual battery. The legislature has by statute classified capital sexual battery as a "capital felony." § 794.011(2)(a), Fla. Stat. (2016). The trial court nonetheless dismissed the second-degree perjury charges because it believed that capital sexual battery cannot be a capital felony because the Eighth Amendment prohibits imposition of the death penalty for that offense. As we shall explain, the statutory term "capital felony" unambiguously refers to an offense that the legislature has by statute classified as a capital felony without regard to whether the death penalty may constitutionally be imposed for an offense so classified. The trial court's contrary interpretation was incorrect, and we reverse.

### The Second-Degree Perjury Charges and the Trial Court's Order

The second-degree perjury offenses the State charged in this case arise from sworn testimony Mr. Kwitowski gave in the prosecution of Jason Daniels. The State Attorney in Polk County charged Mr. Daniels with nine counts of sexual battery on a child under twelve—capital sexual battery, see § 794.011(2)(a)—and certain other offenses.

Mr. Kwitowski was hired as a defense expert on computers. According to the State, Mr. Kwitowski told lies about his qualifications as a computer expert during a deposition, a pretrial hearing, and the trial in Mr. Daniels's case. He is alleged to have falsely stated that he had degrees, certifications, security clearances, and experience that he did not in fact have. The State charged Mr. Kwitowski with, among other things, three counts of second-degree perjury in violation of section 837.02(2).

Mr. Kwitowski responded with a motion to dismiss filed under Florida Rule of Criminal Procedure 3.190(c)(4) in which he argued that capital sexual battery is not a capital felony within the meaning of the second-degree perjury statute. After a hearing,

the trial court granted the motion and dismissed the second-degree perjury charges. Relying on the supreme court's decision in Mills v. Moore, 786 So. 2d 532, 538 (Fla. 2001), the trial court reasoned that a capital felony is one that is punishable by death. It explained that in Buford v. State, 403 So. 2d 943, 951 (Fla. 1981), our supreme court held that the cruel and unusual punishments clause of the Eighth Amendment to the United States Constitution prohibits the imposition of the death penalty for sexual battery offenses. See also Kennedy v. Louisiana, 554 U.S. 407, 413 (2008) (holding that the Eighth Amendment forbids imposition of the death penalty for the rape of a child where the crime did not and was not intended to result in the death of the victim). Because the death penalty can no longer constitutionally be imposed for capital sexual battery, the trial court concluded that capital sexual battery is not a capital felony within the meaning of the second-degree perjury statute. The trial court further concluded that any ambiguity in the statute is required under the rule of lenity to be resolved in Mr. Kwitowski's favor.

The State timely appealed the trial court's order. It raises the single issue of whether capital sexual battery is a "capital felony" as that term is used in the second-degree perjury statute. This is evidently a question of first impression. Because it involves a matter of statutory interpretation, we review the trial court's decision de novo. See State v. Burris, 875 So. 2d 408, 410 (Fla. 2004).

### The Legislature's Classification of Felony Offenses

Getting to the bottom of the statutory issue this case presents requires a little background on how the legislature classifies felony crimes—including capital felonies—and what those classifications mean. In 1971, the legislature adopted section 775.081, titled "[c]lassifications of felonies and misdemeanors." § 775.081, Fla. Stat.

(1971).  The statute remains in materially identical form today.  In it, the legislature has expressly "classified" felonies into five distinct categories "for the purpose of sentence and for any other purpose specifically provided by statute."  § 775.081(1), Fla. Stat. (2016).  Those categories are "capital felony," "life felony," and felonies of the first, second, and third degrees.  Id.  "A capital felony and a life felony must be so designated by statute."  Id.  All other felonies bear the classification expressly given to them by an applicable statute and, if none is given, are deemed to be third-degree felonies.  Id.

By its terms, then, the statutory scheme presumes that when the legislature defines a felony offense, it will also classify that offense as a capital felony, a life felony, or a felony of the first, second, or third degree.  And that is in fact what the legislature does.  Thus, for example, when the legislature criminalized the use of the internet to solicit a child, it simultaneously and in the same statute classified that offense as a third-degree felony or, if the defendant misrepresents his or her age in the process, a second-degree felony.  § 847.0135(3), Fla. Stat. (2016).  Similarly, the same statute that defines the offense of aggravated assault also classifies that offense as a third-degree felony.  § 784.021, Fla. Stat. (2016).  And the statute that defines first-degree murder also classifies that crime as a capital felony.  § 782.04(1)(a), Fla. Stat. (2016). The Florida Criminal Code is chock-full of statutes that work in precisely this way—they create an offense and simultaneously categorize it using the classification system in section 775.081(1).

The most immediate consequence of the classification of a felony offense is to set the scope of any potential sentence.  Life felonies, as the name implies, are punishable by a sentence of life in prison or a lengthy term of years, depending on the nature of the offense and when it was committed.  § 775.082(3)(a).  First-degree

- 4 -

felonies are generally punishable by a term of imprisonment not to exceed thirty years. § 775.082(3)(b)(1). Second-degree felonies are generally punishable by a term not to exceed fifteen years. § 775.082(3)(d). And third-degree felonies are generally punishable by a term not to exceed five years. § 775.082(3)(e). The natural inference to draw from all this, of course, is that the classification of a felony reflects a legislative judgment about the severity of the punishment to be imposed for the offense.

A capital felony receives the most severe punishment. Subject to the outcome of a penalty phase proceeding in a prosecution for a capital felony, such an offense is punished either by death or by life in prison without the possibility of parole. § 775.082(1)(a). The legislature considered the possibility that the death penalty might be deemed unconstitutional by the Supreme Court of the United States or our own supreme court and provided that, in such circumstances, a person previously sentenced to death should be resentenced to life in prison without parole. See § 775.082(2).

### The Text of the Second-Degree Perjury and Capital Sexual Battery Statutes Unambiguously Makes Capital Sexual Battery a Capital Felony

With an understanding of the classification of capital felonies behind us, we turn to the question this case presents—whether the term "capital felony" as used in the second-degree perjury statute covers capital sexual battery even though the death penalty cannot constitutionally be imposed for that offense.

Our starting point—and, in this case, our ending point—is the text of the operative statute. See Diamond Aircraft Indus., Inc. v. Horowitch, 107 So. 3d 362, 367 (Fla. 2013) (explaining that statutory interpretation "begins with the plain meaning of the actual language of the statute"). If the language of the statute is unambiguous, then our job is at an end; the plain meaning of the statute decides the case. See Holly v. Auld,

450 So. 2d 217, 219 (Fla. 1984). If the statutory text is ambiguous, however, we turn to rules of statutory construction to determine its meaning. See English v. State, 191 So. 3d 448, 450 (Fla. 2016). Statutory language is ambiguous when it could be reasonably understood as meaning two—or potentially more—different things. See Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So. 2d 452, 455 (Fla. 1992) ("Ambiguity suggests that reasonable persons can find different meanings in the same language.").

The legislature created the offense of second-degree perjury in 1997. See § 837.02(2), Fla. Stat. (1997). The statutory definition of that offense remains the same today. Section 837.02(2) provides as follows:

> Whoever makes a false statement, which he or she does not believe to be true, under oath in an official proceeding that relates to the prosecution of a capital felony, commits a felony of the second degree.

§ 837.02(2), Fla. Stat. (2016) (emphasis added). Any other perjury during an official proceeding is a third-degree felony. § 837.02(1). The second-degree perjury statute thus carves out for more severe treatment perjury in an official proceeding relating to the prosecution of a capital felony. Here, Mr. Kwitowski allegedly lied during a prosecution for capital sexual battery. So the question is whether capital sexual battery is a capital felony as used in the second-degree perjury statute.

The most logical place to start looking for the answer is the statute that defines the offense of capital sexual battery. Section 794.011(2)(a) provides as follows:

> A person 18 years of age or older who commits sexual battery upon, or in an attempt to commit sexual battery injures the sexual organs of, a person less than 12 years of age commits a capital felony.

(Emphasis added.) Taking the language of the second-degree perjury and capital sexual battery statutes at face value, then, the answer to our interpretative question

seems obvious. Capital sexual battery is a "capital felony" within the meaning of the second-degree perjury statute because the legislature explicitly stated in the capital sexual battery statute that capital sexual battery is a "capital felony." Id. *Q.E.D.*

But the trial court held instead that the term "capital felony" in the second-degree perjury statute means only a felony for which the death penalty may constitutionally be imposed. That is not without intuitive appeal. After all, when people use the word "capital" to modify words like "crime" or "offense," it is ordinarily understood that they are talking about a crime that is punishable by death. See *Capital case or crime*, Black's Law Dictionary (6th ed. 1990) (defining "capital case or crime" as "[o]ne in or for which death penalty may, but need not necessarily, be imposed"). And from there, it is not too much of a stretch to argue that the term reasonably embraces an understanding that the death penalty is not merely statutorily available but also constitutionally permissible. This general common understanding of the word "capital" when used with reference to an offense does not, however, make it reasonable to read the specific statutory term "capital felony" in section 837.02(2) as referring only to a felony for which the death penalty may constitutionally be imposed, so as to give rise to an ambiguity that we must resolve. Two key principles we use to determine the plain meaning of statutory terms show that the trial court's reading of the term "capital felony" is not a reasonable one.

Defined terms ordinarily get their defined meanings. The trial court's interpretation of the term "capital felony" hinged on its sense that the ordinary meaning of that term refers to a felony constitutionally punishable by death. And it is doubtless true that when we determine the plain meaning of an undefined term in a statute, the ordinary, everyday meaning of that term is what usually controls. See Donato v. Am.

<u>Tel. & Tel. Co.</u>, 767 So. 2d 1146, 1154 (Fla. 2000). But where the legislature has defined the term, it is the defined meaning, not the ordinary meaning, that controls—at least absent a clear indication that a different meaning from the defined one was what the legislature meant. See <u>Nicholson v. State</u>, 600 So. 2d 1101, 1103 (Fla. 1992) ("When a definition of a word or phrase is provided in a statute, that meaning must be ascribed to the word or phrase whenever it is repeated in the statute unless a contrary intent clearly appears."). Here, section 775.081—the statute classifying felonies into different categories—defines the term "capital felony" as a felony that the legislature has classified by statute as a capital felony.

The classification statute is, to be sure, not a run-of-the-mill definitional statute of the type that begins "as used in this chapter, the following terms have the following meanings." But that is how the statute operates. It says both that a "capital felony" is one that the legislature has by statute classified as such and that this classification operates "for the purpose of sentence <u>and for any other purpose specifically provided by statute</u>." § 775.081(1) (emphasis added). In other words, where the legislature has classified an offense as a capital felony, that classification controls both for purposes of sentence and for any other purpose where a statute specifically provides that classification is relevant. Although it does not call itself a "definitions" provision, that is very much what the classification statute is. Like a definitional provision, the text of the classification statute tells the reader that when the legislature uses the term "capital felony" in a statute that specifically makes the classification of a felony relevant, it means any felony that it has by statute called a capital felony.

The second-degree perjury statute is one in which the legislature has specifically made the classification of a "capital felony" relevant. Section 837.02(2) takes one class of felonies—capital felonies—and sets them apart from all others for purposes of determining when to punish perjury as a second-degree felony instead of as a third-degree felony. The second-degree perjury statute is thus engaged in the business of classifying felonies. And section 775.081 says that when the legislature has made the classification of a felony relevant, that classification means what the legislature says it means. Nothing about the second-degree perjury statute provides any indication, let alone the clear one the law requires, that the term "capital felony" as used there means anything other than what the legislature said in section 775.081— namely, that a capital felony is one that it has by statute classified as such.

The legislature has classified capital sexual battery as a capital felony. The principle that defined terms carry their defined meanings thus required the trial court to hold that the term "capital felony" in the second-degree perjury statute encompassed the capital sexual battery offenses that were the subject of the criminal proceeding in which Mr. Kwitowski allegedly committed perjury. See, e.g., Burgess v. State, 198 So. 3d 1151, 1156 (Fla. 2d DCA 2016) (holding that the statutory definition of "driver license" prevailed over broader understanding that the term embraced a "driving privilege"), review denied, No. SC16-1751, 2017 WL 5712153 (Fla. Nov. 28, 2017).

Specialized and legally significant terms get their specialized and legally significant meanings. If we did not consider the term "capital felony" in the second-degree perjury statute a defined term, we would nonetheless conclude that it carries a specialized meaning that unambiguously refers to a felony the legislature has by statute dubbed a "capital felony." When a statutory term has been used in a way that carries a

- 9 -

specialized or technical meaning, that meaning prevails over the term's ordinary meaning. See City of Tampa v. Thatcher Glass Corp., 445 So. 2d 578, 579 (Fla. 1984); OB/GYN Specialists of the Palm Beaches, P.A. v. Mejia, 134 So. 3d 1084, 1088 (Fla. 4th DCA 2014) (stating that "in considering the meaning of particular words and phrases, courts must also distinguish between terms of art that may have specialized meanings and other words" that are given the meaning they have in ordinary usage). And similarly, when a statute "uses an undefined term with a fixed legal meaning fitting the context, that meaning governs" instead of the ordinary meaning of that term. Crews v. Fla. Pub. Emp'rs Council 79, AFSCME, 113 So. 3d 1063, 1069 (Fla. 1st DCA 2013); see also Thatcher Glass, 445 So. 2d at 579 n.2 ("Terms of special legal significance are presumed to have been used by the legislature according to their legal meanings."). The context in which the word is used is an important factor in determining whether the term has been used in a technical or ordinary sense. See Thatcher Glass, 445 So. 2d at 579 ("[T]he context may be referred to in ascertaining the sense [technical or ordinary] in which [a term] was used." (quoting Southern Bell Tel. & Tel. Co. v. D'Alemberte, 21 So. 570, 572 (Fla. 1897))); State v. Brown, 412 So. 2d 426, 428 (Fla. 4th DCA 1982) (explaining that determining whether a word has been used in a technical sense depends on "the manner or context in which the words are used").

Here, the context in which the term "capital felony" is used in the Florida Criminal Code is dispositive of the question. See Miele v. Prudential-Bache Sec., Inc., 656 So. 2d 470, 472 (Fla. 1995) ("[T]he plain meaning of 'civil action' must be derived from the context in which the language lies."); City of Treasure Island v. Tahitian Treasure Island, LLC, 42 Fla. L. Weekly D2296 (Fla. 2d DCA Oct. 27, 2017) (looking to the text of the statute under consideration and related statutes to determine whether a

statutory term carried a specialized meaning). In the Florida Criminal Code, the term "capital felony" is both a specialized reference and a legally significant reference to a felony that the legislature has classified as such. Section 775.081(1) lists every classification the legislature might give to any felony it creates and then says that each felony has the classification the legislature gives it in a statute. One of those classifications is "[c]apital felony." Id. Whatever the ordinary meaning of the term "capital felony" might be in other contexts, section 775.081(1) quite clearly refers to a felony that the legislature has labeled a capital felony in a statute that classifies an offense.

The meanings that section 775.081(1) gives to each classification it creates—including the capital felony classification—are used throughout the Florida Criminal Code in statutes that define criminal offenses. When so used, the terms of classification uniformly carry the meaning that section 775.081(1) gives them. Thus, when the legislature said in section 794.011(2)(a) that capital sexual battery is a capital felony, it was unambiguously referring to the classification "capital felony" in section 775.081(1) and not to the potential ordinary meaning concept of an offense for which the death penalty is a constitutionally acceptable punishment.

And when the legislature adopted section 837.02(2) in 1997—more than a decade after Buford held that it is unconstitutional to apply the death penalty to sexual battery offenses—it defined second-degree perjury by reference to a prosecution for a "capital felony." It used a term that then (and now) was understood throughout the Code to have a specialized and legally-fixed meaning as a felony classified by the legislature as a capital felony. Capital sexual battery was then (and now) classified as a capital felony. Given that statutory context, it is not reasonable to understand the term

- 11 -

"capital felony" in section 837.02(2) as having any meaning other than the specialized, legal meaning it had in the context of the Florida Criminal Code at the time section 837.02(2) was adopted.  Cf. Boland v. State, 893 So. 2d 683, 684 (Fla. 2d DCA 2005) (assuming that section 837.05(2), Florida Statutes (2002), which criminalizes reporting false information "concerning the alleged commission of a capital felony," applied to reports of sexual battery on children under twelve because "[i]f the reports had been correct, the doctor would have been guilty of capital felonies").  Nothing in section 837.02(2) suggests that any different meaning could have been intended.

We recognize, of course, that the consequence of the classification of an offense as a capital felony is that the legislature deems it potentially eligible for imposition of the death penalty under section 775.082(1)(a).  But that consequence does not make it reasonable to understand the term "capital felony" in the second-degree perjury statute as meaning only a felony that may constitutionally be punished by death.  Nothing in either section 775.081(1) or section 775.082 says that the constitutional availability of the death penalty determines or influences the classification of a crime as a capital felony—i.e., nothing in those statutes says that a capital felony for which the death penalty is no longer constitutionally available is no longer classified as a capital felony.  See Huffman v. State, 611 So. 2d 2, 4 (Fla. 2d DCA 1992) (holding that during the period that the death penalty was unconstitutional under Furman v. Georgia, 408 U.S. 238 (1972), "the crime of rape remained a capital felony . . . , albeit one for which the death penalty was no longer a permissible alternative").  And once it is understood that the term "capital felony" as used in the second-degree perjury statute carries the meaning it has elsewhere in the Code, that ends the discussion.  Capital sexual battery is a capital felony for purposes of that statute.

### *The Trial Court's Reasoning*

In holding that the term "capital felony" means a felony that may constitutionally be punished by death, the trial court relied primarily on the supreme court's decision in <u>Mills</u>, 786 So. 2d at 538, and the rule of lenity.  Neither affords a legitimate basis for its construction of section 837.02(2).

<u>Mills</u> is inapposite because it had nothing to do with section 837.02(2) or whether a felony classified as a capital felony retains that classification, and hence that meaning, when it is determined that it is unconstitutional to impose the death penalty for that particular felony.  In <u>Mills</u>, a trial judge sentenced a defendant to death for murder, overriding an advisory jury's recommendation of life imprisonment.  <u>Id.</u> at 534.  In a habeas petition filed with the supreme court, the defendant argued that he was entitled to a jury determination on the applicability of the death penalty under <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), which held that any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.  <u>Mills</u>, 786 So. 2d at 536.  He claimed that the statutory maximum sentence for a capital felony was life imprisonment and that the statutory aggravators under the then-existing capital sentencing scheme were facts that increased the penalty beyond the statutory maximum of life to death, implicating his right to a jury determination.  <u>Id.</u> at 537-38.  The question in <u>Mills</u>, then, was whether the statutory maximum sentence for a capital felony was life imprisonment or death.[1]  <u>Id.</u>

---

[1]It is now clear that the jury in a capital case must unanimously and expressly find all the aggravating factors that were proved beyond a reasonable doubt, unanimously find that the aggravating factors are sufficient to impose death, unanimously find that the aggravating factors outweigh the mitigating circumstances, and unanimously recommend a sentence of death.  <u>See</u> <u>Hurst v. State</u>, 202 So. 3d 40, 57 (Fla. 2016).

The supreme court held that the statutory maximum was death.  Id. at 538.  Citing section 775.082(1), the statute that makes the death penalty available for capital felonies, and section 921.141, Florida Statutes (1979), the statute establishing the procedure for determining whether to inflict it, the supreme court held that "there can be no doubt that a person convicted of a capital felony faces a maximum possible penalty of death."  Id.  The version of the statute then in effect provided that a person convicted of a capital felony "shall be punished by life imprisonment" or, depending on the outcome of a sentencing proceeding, "shall be punished by death."  Id. (quoting § 775.082(1), Fla. Stat. (1979)).  Then it cited two dictionary definitions of the term "capital" and stated that "a 'capital felony' is by definition a felony that may be punishable by death.  The maximum possible penalty described in the capital sentencing scheme is clearly death."  Id.  The trial court relied on this language in holding that a capital felony within the meaning of the second-degree perjury statute was one that is constitutionally punishable by imposition of the death penalty.

The trial court read this statement too broadly.  The supreme court in Mills was not concerned with defining the statutory term "capital felony" as it is used throughout the Florida Criminal Code.  It was concerned with the very different question of which of two punishments—death or life in prison—was the statutory maximum punishment for an offense.  To accomplish that, the court looked to the statutes prescribing punishment for offenses classified as capital felonies and determined that those statutes prescribed a maximum punishment of death for offenses so classified.  It buttressed that conclusion by considering the ordinary meaning of the term "capital" as connoting death-eligibility.  Relying on the ordinary understanding of the word "capital" to support a conclusion that the legislature established a statutory maximum of death,

- 14 -

however, is not the same as giving meaning to the term "capital felony" throughout the Code. The supreme court did not, for example, determine what meaning section 775.081(1) gives to the term "capital felony"; the question in Mills did not require it, but the question here does. Similarly, the supreme court did not assess what happens to a capital felony classification when death becomes constitutionally unavailable as a sentence; the question in Mills did not require it, but the question here does. In sum, Mills cannot legitimately be interpreted as holding that an offense is a capital felony for purposes of the Florida Criminal Code when, and only when, the Constitution permits the imposition of the death penalty for an offense so classified. Rather, unless and until the legislature changes that classification, the offense remains a "capital felony" as that term is used in the Criminal Code—just one for which a sentence of death cannot, consistent with the Constitution, be carried out.[2] See Batie v. State, 534 So. 2d 694, 694-95 (Fla. 1988) (holding that a defendant convicted of capital sexual battery after Buford was not entitled to postconviction bond under a rule permitting such bond in "noncapital cases" and stating that "[n]otwithstanding our determination that the sexual battery proscribed by subsection 794.011(2) is no longer a capital crime, in Rusaw[ v. State, 541 So. 2d 469 (Fla. 1984)] and [State v. Hogan, 451 So. 2d 844 (Fla. 1984),] we recognized the legislature's definition of it as 'capital' in determining legislative intent for the other consequences of this crime"); Hogan, 451 So. 2d at 845-46 (holding that a twelve-member jury is not required in capital sexual battery cases under statute and rule

_____

[2]Mr. Kwitowski relies heavily on Heuring v. State, 513 So. 2d 122 (Fla. 1987), but that case dealt with the question of whether capital sexual battery must be charged by indictment rather than information and not what the term "capital felony" means when it is used in the Criminal Code. See art. I, § 15, Fla. Const. ("No person shall be tried for capital crime without presentment or indictment by a grand jury.").

- 15 -

providing for such juries in "capital cases" but explaining that capital sexual battery is "still defined as a 'capital' crime by the legislature"); <u>Rusaw</u>, 451 So. 2d at 470 (rejecting argument that, in light of <u>Buford</u>, a defendant convicted of capital sexual battery should have been sentenced as though he committed a life felony because "the legislature has denominated certain conduct to be a 'capital' crime and has provided alternative penalties for that crime").

The trial court's reliance on the rule of lenity was also misplaced. The rule of lenity, which requires the resolution of ambiguities in criminal statutes in favor of the defendant, comes into play only when a statute is ambiguous and remains so after consulting traditional canons of statutory construction. <u>See</u> § 775.021(1), Fla. Stat. (2016); <u>Paul v. State</u>, 129 So. 3d 1058, 1064 (Fla. 2013). Because the term "capital felony" in section 837.02(2) is not ambiguous, the rule of lenity has no role to play in this case.

## *Conclusion*

Floating in the background of this case is a concern that because capital sexual battery ceased in constitutional terms to be punishable by death, a more severe sanction for testifying falsely in such cases is mistaken or unnecessary. Maybe. But maybe majorities in the legislature believe that notwithstanding the unavailability of the death penalty, capital sexual battery is sufficiently serious to justify a harsher punishment for perjury in those prosecutions. Or maybe some other considerations are at work. Choosing the best view and revising the statute books accordingly (or not) is, however, a classic example of a function that belongs to the legislature and not to the courts. <u>See</u> <u>Burgess</u>, 198 So. 3d at 1159. As it stands, the legislature has stated that a capital felony is a felony that it has classified as such. Nothing in section 837.02(2)

- 16 -

shows that the term has a different meaning there.  The trial court's holding to the contrary was mistaken.  We reverse its order granting Mr. Kwitowski's motion to dismiss and remand for further proceedings consistent with this opinion.

Reversed and remanded.

NORTHCUTT and CRENSHAW, JJ., Concur.