# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____


ZIAD WALID GHAMRA, M.D., an individual,
and LUNG ASSOCIATES OF SARASOTA, LLC,

Appellants,

v.

KHA'LEYA WILLIAMS, as personal representative of the Estate of Derrick
J. Williams, deceased; DMH REAL ESTATE HOLDINGS, INC. f/k/a
DeSoto Memorial Hospital, Inc., a Florida not-for-profit corporation;
RAFAEL PITA, M.D., an individual; SARASOTA COUNTY PUBLIC
HOSPITAL DISTRICT d/b/a Sarasota Memorial Hospital; PEDRO JOSE
VELOZ PERALTA, an individual; and FLORIDA STATE UNIVERSITY
BOARD OF TRUSTEES, a public body corporate,

Appellees.


No. 2D2024-2585

_____


September 5, 2025

Appeal pursuant to Fla. R. App. P. 9.130 from the Circuit Court for
Sarasota County; Hunter W. Carroll, Judge.

Jamie Billotte Moses of MMPO Defense Florida, Orlando, for Appellants.

Terry P. Roberts of Fischer Redavid, PLLC, Hollywood, for Appellee
Kha'Leya Williams.

No appearance for remaining Appellees.

BLACK, Judge.

Dr. Ziad Walid Ghamra, M.D., and Lung Associates of Sarasota, LLC, appeal from the order denying their motion to dismiss the medical negligence lawsuit against them, among others, on the basis that the presuit requirements regarding a medical expert affidavit were not met in this case. We reverse and remand for dismissal of the amended complaint with prejudice.

I.    Factual Background

In May 2024 Kha'leya Williams, as the personal representative of the Estate of Derrick J. Williams, filed a wrongful death medical malpractice lawsuit against DeSoto County Hospital District d/b/a DeSoto Memorial Hospital; Rafael Pita, M.D.; Sarasota County Public Hospital District d/b/a Sarasota Memorial Hospital; Pedro Jose Veloz Peralta, M.D.; Ziad Walid Ghamra, M.D.; Lung Associates of Sarasota, LLC; and Florida State University Board of Trustees. As relevant to this appeal, the complaint alleged that Dr. Ghamra is the owner and sole member of Lung Associates of Sarasota.

In the June prior to filing the lawsuit, Ms. Williams served a Notice of Intent to Initiate Medical Negligence Litigation pursuant to sections 766.106 and 766.203, Florida Statutes (2023). Attached to the notice of intent was the affidavit of Joshua M. Willis, M.D. Dr. Willis is board certified in internal medicine, cardiovascular disease, and interventional cardiology. In his affidavit, Dr. Willis opined that Dr. Ghamra, as well as three other physicians, fell below the standard of care in their treatment of Mr. Williams. Dr. Willis's affidavit included that "[c]ardiology and [p]ulmonary consultations were placed" while Mr. Williams was at Sarasota Memorial Hospital. The affidavit further detailed the notes from the critical care pulmonology consultation.

2

Twice prior to the expiration of the presuit period and expiration of the statute of limitations, Dr. Ghamra and Lung Associates advised Ms. Williams that Dr. Willis's affidavit did not comply with section 766.102 and the presuit requirements to filing a medical malpractice action.

In response to the amended complaint filed by Ms. Williams in June 2024, Dr. Ghamra and Lung Associates filed the subject motion to dismiss. Dr. Ghamra and Lung Associates argued that the presuit notice of intent served by Ms. Williams failed to comply with the presuit requirements of chapter 766. As alleged in the motion to dismiss, Dr. Ghamra is board certified in internal medicine, pulmonary disease, and critical care medicine and has worked in pulmonary medicine and pulmonary critical care services at Sarasota Memorial Hospital since December 2017. Dr. Ghamra consulted in Mr. Williams' care at Sarasota Memorial Hospital in his capacity as a critical care pulmonologist.

Dr. Ghamra and Lung Associates asserted that dismissal was required because the relevant statute requires that the presuit notice of intent include the opinion of a medical expert in "the same specialty" as the specialist against whom the opinion is being offered and that because Dr. Willis does not specialize in the same specialty as Dr. Ghamra, Ms. Williams had not complied with the legal requirements of filing suit before the statute of limitations expired such that dismissal was required. *See* § 766.102(5)(a).

Ms. Williams opposed the motion to dismiss, arguing that specializing in the same specialty does not mean specializing in the same subspecialty. Ms. Williams asserted that Dr. Ghamra and Dr. Willis specialize in internal medicine but practice in critical care pulmonology and cardiology, respectively. In support of the argument that internal medicine is the requisite specialty, Ms. Williams cited the websites of the

3

American Board of Internal Medicine and the American Board of Emergency Medicine, as well as *Pradaxay v. Kendrick*, 387 So. 3d 437 (Fla. 6th DCA 2024).

At the evidentiary hearing on the motion to dismiss, Dr. Ghamra contended that the critical question before the trial court was "whether a practicing interventional cardiologist and cardiovascular disease physician specializes in the same specialty as a critical care pulmonologist." Dr. Ghamra argued that if the court were to agree with Ms. Williams' argument, an internist could not only

> opine as to standard of care of critical care pulmonologists, but he [could] also opine as to the dozens of other internal medicine disciplines, including just to name a few, endocrinology, gastroenterology, hematology, and oncology, infectious disease, pediatrics, rheumatology, nephrology, and the like. In other words, it would—it would be imposing a cardiovascular specialist's expertise on dissimilar specialties. This vitiates the very nature of a physician's specialization.

In response, Ms. Williams argued that the trial court needed only to decide whether the physicians share the same specialty: internal medicine.

The court denied the motion to dismiss, determining that Dr. Willis and Dr. Ghamra specialize in the same specialty—internal medicine— and that pulmonology is a subspecialty of internal medicine.

II.    Statutory Framework

Before filing a medical malpractice lawsuit, the prospective plaintiff must "conduct an investigation to ascertain that there are reasonable grounds to believe that" the prospective defendant "was negligent in the care or treatment of the" prospective plaintiff and that the "negligence resulted in injury to the" prospective plaintiff. § 766.203(2). The reasonable grounds must be corroborated by "submission of a verified written medical expert opinion from a medical expert as defined in

4

[section] 766.202(6)." *Id.* Section 766.202(6) defines "[m]edical expert" as "a person duly and regularly engaged in the practice of his or her profession who holds a health care professional degree from a university or college and who meets the requirements of an expert witness as set forth in [section] 766.102."

> Section 766.102, in turn, provides that "[a] person may not give expert testimony concerning the prevailing professional standard of care unless the person is a health care provider who holds an active and valid license and conducts a complete review of the pertinent medical records and meets [certain] criteria . . . . " § 766.102(5), Fla. Stat. (2016). These certain criteria depend on the type of health care provider "against whom . . . the testimony is offered." *Id.*

*Univ. of Fla. Bd. of Trs. v. Carmody*, 372 So. 3d 246, 249 (Fla. 2023) (alterations in original).[1] Section 766.102(5)(a) lists criteria for a specialist, while section 766.102(5)(b) lists criteria for a general practitioner. As applicable here, because neither party disputes that Dr. Ghamra is a specialist and not a general practitioner, "the expert witness must . . . [s]pecialize in the same specialty" as Dr. Ghamra. *See* § 766.102(5)(a)1.

Neither specialty nor specialist is defined in chapter 766. And as the supreme court has noted, in the absence of definitions "[a] great deal of litigation has occurred as a result of attempting to interpret and apply the provisions of [section] 766.102(2)." *Morris v. Muniz*, 252 So. 3d 1143, 1152 n.5 (Fla. 2018).

III.   Analysis

As we are determining whether the trial court correctly applied the statute—and specifically the term specialty—to the undisputed facts at

---

[1] We note that there are no differences in the language between the 2016 versions of the statutes and the 2023 versions, applicable here.

the evidentiary hearing, our review is de novo. *See, e.g., Oliveros v. Adventist Health Sys./Sunbelt, Inc.*, 45 So. 3d 873, 876 (Fla. 2d DCA 2010) ("[B]ecause the facts concerning Dr. Sichewski's background and experience are unrefuted, the question of his qualifications as an expert turns on the application of the relevant statutes, which is an issue of law.").

Dr. Ghamra argues that Dr. Willis does not specialize in the same specialty. He contends that his specialty is pulmonology or critical care pulmonology while Dr. Willis's specialty is cardiology. Ms. Williams responds, in part, that internal medicine is the requisite specialty where presuit corroboration is intended to demonstrate that reasonable grounds exist for the medical malpractice lawsuit and not to impose "hyper-specific requirements."

In the absence of a statutory definition for specialty or specialist, "we look to sources bearing on its objective meaning, that is: what a reasonable reader would have understood it to mean at the time it issued." *Steele v. Comm'r of Soc. Sec.*, 385 So. 3d 587, 590 (Fla. 2024). " 'Context is a primary determinant of meaning,' and the 'entirety' of the law at issue 'provides the context for each of its parts.' " *Cohen v. Autumn Vill., Inc.*, 339 So. 3d 429, 431 (Fla. 1st DCA 2022) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012)). "[T]aking into consideration the context in which the word appears" requires us to " 'exhaust "all the textual and structural clues" ' that bear on the meaning of a disputed text." *Conage v. United States*, 346 So. 3d 594, 598-99 (Fla. 2022) (quoting *Alachua County v. Watson*, 333 So. 3d 162, 169 (Fla. 2022)); *accord Pradaxay*, 387 So. 3d at 440. And the context may inform "whether the common or the technical meaning of the phrase at issue here should be used." *City*

6

*of Tampa v. Thatcher Glass Corp.*, 445 So. 2d 578, 580 (Fla. 1984); *see also State v. Kwitowski*, 250 So. 3d 210, 215 (Fla. 2d DCA 2018) ("When a statutory term has been used in a way that carries a specialized or technical meaning, that meaning prevails over the term's ordinary meaning.").

"[I]f technical words are used, they are to be taken in a technical sense." *Lab'y Corp. of Am. v. Davis*, 339 So. 3d 318, 323 (Fla. 2022) (quoting James Kent, *Commentaries on American Law* 432 (1826)); *cf. Gov't Emps. Ins. v. Macedo*, 228 So. 3d 1111, 1113 (Fla. 2017) (reiterating that "courts may look to legal and non-legal dictionary definitions to determine" the meaning of an undefined term in an insurance policy (quoting *Botee v. S. Fid. Ins.*, 162 So. 3d 183, 186 (Fla. 5th DCA 2015))); *Dungarani v. Benoit*, 312 So. 3d 126, 129 (Fla. 5th DCA 2020) ("Viewed in context, 'a trial de novo' is referenced technically, as a specific type of legal proceeding, and thus we may consult legal dictionaries to define it." (citing *United States v. Obando*, 891 F.3d 929, 934 (11th Cir. 2018), for the proposition that the ordinary meaning of a term "will yield when the term has 'a technical meaning' or is a 'term of art' ")). We know that "[t]he term 'medical expert' as used in section 766.202(6) is a term of art delineated by that statute." *Baptist Med. Ctr. of Beaches, Inc. v. Rhodin*, 40 So. 3d 112, 118 (Fla. 1st DCA 2010). And because medical experts can be specialists or general practitioners, it follows that those terms also have technical meanings. *See Kwitowski*, 250 So. 3d at 215 ("The context in which the word is used is an important factor in determining whether the term has been used in a technical or ordinary sense.").

In the medical context, specialty is defined as "[t]he particular subject area or branch of medical science to which one devotes professional attention." *Specialty, Stedmans Medical Dictionary* 833080

7

(2014).  A specialist is "[o]ne who has developed professional expertise in a particular specialty or subject area."  *Specialist, Stedmans Medical Dictionary* 833050 (2014).  Specialize is defined as "[t]o engage in specialization," *specialize, Stedmans Medical Dictionary* 833070 (2014), and specialization is defined as "[p]rofessional attention limited to a particular specialty or subject area for study, research, and/or treatment," *specialization, Stedmans Medical Dictionary* 833060 (2014).

Here, the technical meanings are no different than the ordinary, nontechnical meanings.  The dictionary definition of "specialty" is "[a] branch of medicine or surgery, such as cardiology or neurosurgery, in which a physician specializes; the field of practice of a specialist." *Pradaxay*, 387 So. 3d at 440 (alteration in original) (quoting *Specialty, American Heritage Dictionary* (2011 ed.));[2] *accord B&A Gourmet Foods, LLC v. Mora-Abreu*, 352 So. 3d 29, 31 (Fla. 1st DCA 2022) (quoting *Specialty, American Heritage Dictionary of the English Language* 1669 (4th ed. 2000)) (considering section 440.13(2)(f), Florida Statutes).  A "specialist" is "[a] physician whose practice is limited to a particular branch of medicine or surgery, especially one who is certified by a board

---

[2] The *Pradaxay* court found the dictionary "definition of 'specialty' [to be] noteworthy because it references the medical specialties of cardiology and neurosurgery."  387 So. 3d at 440.  And while Ms. Williams asked the trial court to follow the analysis employed in *Pradaxay*, she nonetheless asserts that cardiology and pulmonology are subspecialties of the specialty of internal medicine.  Regardless, while the examples provided in the *American Heritage Dictionary* are persuasive as to the ordinary meaning of the word, they are not—standing alone—determinative.

of physicians." *Specialty, American Heritage Dictionary of the English Language* 1669 (4th ed. 2000).[3]

In isolation, these definitions are not terribly illuminating for determining whether the operative specialty in this case is internal medicine or pulmonology. *Cf. Pradaxay*, 387 So. 3d at 440 (concluding that gynecology is a branch of medicine—the specialty—which has subspecialties). However, we do not read terms in isolation; rather, we look to "the specific context in which th[e] language is used, and the broader context of the statute as a whole." *Conage*, 346 So. 3d at 598 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). Looking to the textual and structural clues of the statute provides greater clarity.

In addition to setting out the criteria required for an expert witness to testify, section 766.102(5) also states that the "expert testimony concern[s] the prevailing professional standard of care." And section 766.102(1) provides parameters for "[t]he prevailing professional standard of care *for a given health care provider.*" (Emphasis added.) It is important to recognize that section 766.102 addresses expert testimony in medical malpractice actions, but it is applicable both in trial and for presuit purposes without differentiation.

Here, Dr. Ghamra was the pulmonologist who saw Mr. Williams in response to the request for a pulmonology consultation. Based on the clear language of sections 766.102(1) and (5), the prevailing professional standard of care concerns pulmonology. *Cf. Catron v. Roger Bohn, D.C., P.A.*, 580 So. 2d 814, 822 (Fla. 2d DCA 1991) (Altenbernd, J., concurring) ("We cannot create one definition of 'similar health care provider' for

---

[3] The definition of specialist has remained largely unchanged since 1979. *See Catron v. Roger Bohn, D.C., P.A.*, 580 So. 2d 814, 817 (Fla. 2d DCA 1991).

purposes of testimony and another for purposes of the standard of care.").  Taken in context, then, Ms. Williams was required to provide an affidavit concerning the prevailing professional standard of care for pulmonology from an expert who specializes in the same specialty: pulmonology.  *Cf. Tomas v. Sandler*, 406 So. 3d 1089, 1093 (Fla. 3d DCA 2025) ("By their plain language, the presuit statutes require corroboration of all medical negligence claims by a qualified expert.  The purpose of the medical expert opinion is to 'assure the defendants, and the court, that a medical expert has determined that there is justification for the plaintiff's claim; that is, the purpose is not to give notice of the plaintiff's claim, but rather to corroborate that the claim is legitimate.' " (quoting *Rell v. McCulla*, 101 So. 3d 878, 881 (Fla. 2d DCA 2012))); *Riggenbach v. Rhodes*, 267 So. 3d 551, 555 (Fla. 5th DCA 2019) ("Florida courts have previously decided that 'same specialty' is to be taken literally and is not synonymous with physicians with different specialties providing similar treatment to the same areas of the body."), *disapproved of on other grounds by Carmody*, 372 So. 3d 246.

This conclusion is buttressed by additional textual clues.  Section 766.102(5) differentiates between specialists and general practitioners, providing criteria for each type of expert witness.  Thus specialists must be something other than general practitioners.  *Cf. Pfannenstein v. Surrey*, 291 A.3d 302, 311 (N.J. Super. Ct. App. Div. 2023) ("Accordingly, the first question under the statute is 'whether [the treating doctor] is a specialist or general practitioner.'  'A "general practitioner" is defined by what he [or she] is not—he [or she] is not a "specialist or subspecialist." ' " (alterations in original) (quoting *Buck v. Henry*, 25 A.3d 240, 248 (N.J. Sup. Ct. 2011))).  However, neither general practitioner nor generalist is defined in chapter 766.  We turn then to the medical

10

dictionary definition of generalist: "An internist, family physician, or pediatrician who performs general medicine; one who treats most diseases that do not require surgery, sometimes including those related to obstetrics." *Generalist, Stedmans Medical Dictionary* 366900 (2014).

Finally, our conclusion is also supported by the legislature's progressive narrowing of the medical expert qualifications for purposes of chapter 766. Section 766.102 has been amended multiple times, with the most recent being in 2013.

> Prior to 2013, section 766.102(5) provided that if the intended defendant was a specialist, the corroborating medical expert opinion had to come from a health care provider who specialized in either the same specialty or "in a similar specialty that includes the evaluation, diagnosis, or treatment of the medical condition that is the subject of the claim." § 766.102(5)(a)(1), Fla. Stat. (2012). In addition, the statute provided that it did "not limit the power of the trial court to disqualify or qualify an expert witness on grounds other than the qualifications in this section." § 766.102(14), Fla. Stat. (2012).

*Clare v. Lynch,* 220 So. 3d 1258, 1261 (Fla. 2d DCA 2017), *disapproved of on other grounds by Carmody*, 372 So. 3d 246.

> In discussing the 2013 amendment, the supreme court stated that

> [b]y deleting subsection (14)—which had provided that nothing in section 766.102 "limit[ed] the power of the trial court to disqualify or qualify an expert witness on grounds other than the qualifications in this section"—the Legislature eliminated an explicit and substantial basis for trial court discretion. And by simultaneously amending subsection (5)(a) such that any corroborating expert who is to testify against a specialist must specialize in the "same"—as opposed to "same or similar"—specialty, the Legislature eliminated language that implicitly empowered the courts to exercise discretion in a significant subset of medical malpractice actions.

11

*Carmody*, 372 So. 3d at 253 (second alteration in original) (footnote omitted). "[C]ourts are not at liberty to ignore the plain language of the statute or to add back language that was specifically deleted by the legislature." *Clare*, 220 So. 3d at 1261, *disapproved of on other grounds by Carmody*, 372 So. 3d 246. The legislature has authority to impose conditions on the initiation of medical malpractice suits, and while the supreme court has "emphasize[d] that we must construe sections 766.102 and 766.202 in a manner that favors access to the courts, never did it endorse" the proposition that "any qualification requirement that has the effect of narrowing the universe of available experts in a way that might foreclose a medical-malpractice claim" is an access-to-the-courts defect. *Moncrief v. Kollmer*, 397 So. 3d 190, 195 (Fla. 5th DCA 2024).

IV.     Conclusion

Because we conclude that the specialty in this case is pulmonology, we must also conclude that the affidavit of Dr. Willis is legally insufficient and that Dr. Ghamra and Lung Associates' motion to dismiss should have been granted. Dr. Ghamra argues that dismissal with prejudice is the appropriate remedy because the statute of limitations has run and Ms. Williams was on notice well before its expiration that Dr. Willis's affidavit was legally insufficient. We are constrained to agree and reverse and remand for dismissal with prejudice. *See Maguire v. Nichols*, 712 So. 2d 784, 785 (Fla. 2d DCA 1998) ("The case law is clear: The failure to file a properly verified medical opinion letter is not fatal to a plaintiff's cause of action as long as the requirement is met before the expiration of the statute of limitations."); *Lisenbee v. Whitman*, 252 So. 3d 1280, 1280 (Fla. 5th DCA 2018) (affirming dismissal with prejudice for failure to comply with statutory presuit requirements where the statute of limitations had run); *cf. Martinez v. Perez Ortiz*, 346 So. 3d 744, 749 (Fla.

12

2d DCA 2022) (reversing dismissal with prejudice where affidavit was made by physician of same specialty within statute of limitations).

Reversed and remanded.

NORTHCUTT and KELLY, JJ., Concur.

_____

Opinion subject to revision prior to official publication.